UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kirsten Beausoleil and Daniel Ernst, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Three Paws, Inc d/b/a Ardmore Lounge and ) <br> Duane Polen, ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:22-cv-02930 <br><br> Hon. LaShonda A. Hunt <br> Hon. Magistrate Jeffrey T. Gilbert |

**Plaintiffs' Memorandum in Support of Motion For Summary Judgment**

**Factual Background**

Plaintiff Kirsten Beausoleil ("Beausoleil") and Plaintiff Daniel Ernst ("Ernst") worked as a bartender between September 2010 and February 2021. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 7, 9, and 22. Defendant Three Paws, Inc. d/b/a Ardmore Lounge ("Ardmore") is a bar located in Villa Park, DuPage County, Illinois. *Id.,* ¶3.

Defendant Duane Polen ("Polen") is the sole owner and operator of Defendant Ardmore Lounge ("Ardmore") and has been during Plaintiff's employment. *Id.,* ¶ 4. He was Plaintiffs' direct supervisor. *Id.* Defendant Polen handles the business' administrative work, hires and works with the business accountant, and covers any other tasks necessary to run the business such as hiring, training, and firing. *Id.,* ¶ 40. Defendant Polen was also in charge of Defendants' recording and reviewing employees' hours, and processing payroll, during the relevant time period of this lawsuit – between June 2019 and November 2020. *Id.,* ¶ 41.

There were five people working for Defendants in 2019 – Plaintiff Beausoleil, Plaintiff Ernst, Dave Smith, Nancy Breen and Wendy Klebs. *Id.,* ¶ 23. In 2020, Plaintiff Beausoleil, Plaintiff Ernst, Dave Smith, Wendy Klebs, and Kristie Katholl worked for Defendants. *Id.*,¶ 24. Nancy Breen also worked at Ardmore in early part of 2020. *Id.*

During their employment, Plaintiffs regularly received tips from customers. *Id.* ¶ 14. Plaintiffs' duties were to serve drinks, take orders, prepare drinks, handle payment transactions, bus drinks, check IDs, and provide customer service. *Id.* ¶ 10. Plaintiffs also placed orders via phone, received and checked in deliveries, paid for the deliveries, and assisted with delivery tasks relating to inventory and mail. *Id.,* ¶ 11. Plaintiffs also cleaned glassware, bar areas, tables, and floors, as well as bathrooms if needed. They shoveled and laid salt on icy spots around the bar premises during winter. *Id.*, ¶12. The bar also had gambling machines and Plaintiffs had to watch and assist customers using the machines. *Id.*, ¶13.

Plaintiffs were initially hired "off the books" by Defendant Polen meaning that they would be strictly paid in cash. *Id.*, ¶¶ 8-9. When they were first hired off the books in 2010, Defendant Polen informed Plaintiffs that their hourly rate was $6 and told them to write down their wage amount for each day on a piece of paper at the end of each shift and to take their daily wages out from the cash register. *Id.*, ¶14. Defendant Polen told Plaintiffs that they could keep the tips. *Id.* When Plaintiffs were paid off the books, Defendants did not issue any tax forms or paystubs for their wage payments. Nor did they keep any records of Plaintiffs' hours worked. *Id.*, ¶15.

Defendant Duane Polen put Plaintiff Ernst on the books in July 2014 and asked him to fill out a W-4 form. *Id.*, ¶ 16. At that time, Defendant Polin told him that the hourly rate would be $6.50 an hour and he would get paid by check every two weeks. *Id.* Other than that, there was no other communication from Defendant Polin regarding Plaintiff Ernst's compensation during his employment until it ended in February 2021. *Id.* In July 2017, Plaintiff Beausoleil asked Defendant Polen to put her on the books so that she could begin receiving the appropriate tax documents and properly report her income. *Id.*, ¶ 17. Upon her request, Plaintiff Beausoleil was put on the books and she filled out a W-4 form. *Id*. At that time, Defendant Polen told Plaintiff Beausoleil that her hourly rate would be $6.50 and she would get paid by check every two weeks. Other than that, there was no other communication from Defendant Polen regarding Plaintiff Beausoleil's compensation during her employment until it ended in February 2021. *Id.*, ¶18. Defendants did not keep track of the tip amount Plaintiffs received. *Id.*, ¶ 31. The W-2s Plaintiffs received from Defendants do not reflect the tips they had received. *Id.*

Defendant Polen claims that he advised Plaintiffs at or about the time they started as regular, W4 employees that they would be paid $6.50 per hour, that $6.50 was more than the minimum rate required of employers by law for tipped employees; that he was paying above minimum wage for tipped employees to help them with income taxes, and that Plaintiffs would keep all of the tips that they received. *Id.*, ¶35. Defendant Polen also testified he had told Plaintiffs that they would be responsible for their tips because he could not be at the bar the whole time. *Id.*, ¶36. Defendant Polen also testified that around the time Plaintiffs filled out W-4s, he showed them two posters in the backroom about unemployment and employee's rights about work-related injuries. *Id.*, ¶37. Defendant only produced a poster from the Illinois Department of Employment

Security (IDES) that contains dates in 1986 and 1987 as evidence of a proper tip credit notice. *Id.*, ¶38. According to Defendant Polen, these communications he had with Plaintiffs when they filled out their W-4 forms, and showing the aforementioned posters to them, consisted of all of the communications he had with Plaintiffs about their wages. *Id.*, ¶39.

Plaintiffs' last day of work with Defendants was in October 2020, when the Governor of the State of Illinois issued Executive Order 2020-61 on or about October 21, 2020, and they declined to work against the Order during the shutdown period. *Id.*, ¶ 20. Defendant Polen closed the bar initially for about a week starting on October 23, 2020, when Executive Order 2020-61 was issued, but thereafter reopened and continued to operate the bar since October 30, 2020 to present. *Id.*,¶ 21. Plaintiffs were not offered to the option to return to work in February 2021 when the Executive Order was lifted, instead they were terminated by Defendant Polen *Id.*, ¶22.

Plaintiffs filed a two-count complaint on June 3, 2022, alleging that Defendants, their former employer, failed to give them a proper tip credit notice and as a result failed to pay them the minimum wages in violation of the Fair Labor Standards Act ("FLSA")(Count I) and the Illinois Minimum Wage Law ("IMWL")(Count II). Plaintiffs move for summary judgment as to the liability of Defendants for Plaintiffs' claims.

## Legal Standard

The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine issues of material fact and that the movant is entitled to

judgment as a matter of law. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Argument

**I.**     **Defendants failed to give Plaintiffs tip credit notices under the FLSA and failed to pay minimum wages.**

The FLSA allows an employer to pay tipped employees less than the minimum wage as long as the cash wage plus the tips received equal or exceed the minimum wage, this is referred to as a "tip credit". See 29 U.S.C. § 203(m); *see also 29* C.F.R. § 531.59. However, under the FLSA, the employer may not take this tip credit "unless the employer has informed such employee of the provisions" of Section 203(m). *See* 29 U.S.C. *§* 203(m)(2)(A). The corresponding federal regulation, the notice requirement with respect to the tip credit means that the employer must, "in advance of its use of the tip credit, inform the employee of:

> [t]he amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements."

*Gabryszak v. Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 1004 (N.D. Ill. 2019) citing 29 C.F.R. § 531.59(b).

In addition, the regulation also requires employers to keep the following records regarding tipped employees:

> (a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in § 516.2(a) and, in addition, the following:

    (1) A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.

    (2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).

    (3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of the difference between $2.13 and the applicable minimum wage specified in section 6(a)(1) of the Act). The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.

    (4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.

    (5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 C.F.R. § 516.28 (a).

The "statutory minimum" information that the employer must convey under the FLSA in order to be able to take the tip credit is that the employer will pay less than minimum wage in anticipation of the employee earning tips, how much less than the minimum wage the employer will pay, and that the employer will make up any difference between the minimum wage and the cash wage plus tips that the employee earns. *Gabryszak v. Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 1005 (N.D. Ill. 2019) citing *Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 556-58 (7th Cir. 2016). Defendants bear the burden of proof to establish entitlement to tip credit, and notification requirements are strictly construed. *Driver v. Appleillinois*, 265 F.R.D. 293, 298 (N.D.Ill. 2010); *Driver v. Appleillinois*, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013); see also *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3rd Cir. 1994) ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken).

Courts have recognized that although it "is not difficult for the employer" to meet the tip-credit notice requirements, the penalty for failing to meet those obligations can be "harsh." *Gabryszak v.*

*Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 1005 (N.D. Ill. 2019) citing *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992). That is because "an employer who violates the provisions of § 203(m) is liable for the full minimum wage for every hour worked by the employees." *Gavryszak, supra*, citing *Driver v. ApplelIllinois, LLC*, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013).

Here, Defendants have no evidence that they provided the statutorily required minimum tip credit notices under the FLSA. Plaintiffs testified that the only communication they had with Defendant Polen regarding their compensation was how much their hourly rate would be; how they would be paid; and that they could keep the tips from customers. Defendant Polen admits that he did not give the required FLSA tip credit notice to Plaintiffs. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 14,16,18. Defendant Polen testified that he advised Plaintiffs at or about the time they started as regular, W-4 employees that they would be paid $6.50 per hour, that $6.50 was more than the minimum rate required of employers by law for tipped employees; that he was paying above minimum wage for tipped employees to help them with income taxes, and that Plaintiffs would keep all of the tips that they received. *Id.*, ¶ 35. Defendant Polen admitted he did not have any other communication with Plaintiffs regarding their compensation beyond that. *Id.*, ¶ 39. Even assuming Defendant Polen's testimony is true, his communication to Plaintiffs is insufficient under the standard of the FLSA as a matter of law – Defendant Polen failed to inform Plaintiffs that they were paid less than minimum wage in anticipation of their earning tips, how much less than the minimum wage Plaintiffs are getting paid, and that Defendants would make up any difference between the minimum wage and the

cash wage plus tips that Plaintiffs earn.

Further, Defendants admit that they only had this already insufficient communication once with each Plaintiff, around the time Plaintiffs went 'on the books' – with Plaintiff Ernst in 2014, and with Plaintiff Beausoleil in 2017 respectively. *Id.*, ¶ 35. However, the Illinois minimum wage increased in 2020 (See 820 ILCS 105/4) which means that Defendants should have provided a new tip credit notice to Plaintiffs to explain the difference between the new minimum wage and Plaintiffs' $6.50 hourly rate at that point in time, which they did not. Defendants also failed to keep any records for tipped employees required under the relevant federal regulations. *Id.*, ¶ 31.

Based on all evidence in the record, there is no question that Defendants failed to meet the burden that they gave the required tip credit notice in order to be eligible to take the tip credit under the FLSA. As a result, Defendants are liable to pay the full minimum wage to the Plaintiffs for all hours worked. No reasonable jury could find for Defendants. Accordingly, the Court should grant Plaintiff's motion for summary judgment as to the liability of Defendants for Plaintiffs' FLSA claims (Count I).

## II. Defendants failed to give Plaintiffs a tip credit notice under the IMWL and violated minimum wage law.

### 1. Plaintiffs are covered by the IMWL.

Under the IMWL, an "employer" includes any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons are gainfully employed on some day within a calendar year. 820 ILCS 150/3(c). An employer is subject to this Act in a calendar year on and

after the first day in such calendar year in which he employs one or more persons, and for the following calendar year. *Id.* However, the IMWL does not cover employees working "for an employer employing fewer than 4 employees exclusive of the employer's parent, spouse, or child, or other members of his immediate family." 820 ILCS 105/3(d).

Defendant Polen admitted that he had 4-5 employees in 2019 and 2020, which is the relevant time period of this lawsuit. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 23-24. There is no dispute that Defendants employed more than 4 employees and thus Defendants are employers and Plaintiffs are employees within the meaning of the IMWL.

2. **Defendants failed to give adequate tip credit notice to Plaintiffs under the IMWL and violated minimum wage law.**

The IMWL requires employers to pay workers a minimum hourly rate. 820 Ill. Comp. Stat. § 105/4(a)(1). However, for employees "engaged in an occupation in which gratuities have customarily . . . been recognized as part of the remuneration," the employer may calculate as part of the hourly wage rate an allowance for gratuities not to exceed 40% of the applicable minimum wage rate and take tip credit. 820 Ill. Comp. Stat. § 105/4(c). The IMWL's tip credit provisions parallel the FLSA's, and the same analysis generally applies to both statutes." *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010); *see also Soto v. Wings 'R Us Romeoville, Inc.*, 2016 U.S. Dist. LEXIS 121223 at *2 (N.D. Ill. Sept. 8, 2016) ("The IMWL also has a tip-credit provision that is substantially similar to the FLSA provision, but requires employers to pay a slightly larger percentage of the minimum wage to tipped employees."). Just as the FLSA, the employer has the burden of providing evidence supporting the tip credit

allowance under the IMWL. *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298-99 (N.D. Ill. 2010) citing 820 ILCS 105/4(c).

The IMWL requires employers to have an approved summary of the Act "posted in a conspicuous and accessible place in or about the premises." 820 ILCS 105/9. The regulations promulgated by the Illinois Department of Labor ("IDOL") also require employers to maintain additional records for employees whose compensation is derived in part from gratuities. See Ill. Admin. Code tit. 56, pat 210.720. Under this regulation, employers are required to maintain and preserve records containing the following information and data with respect to each such employee, similar to the FLSA requirements:

- a) An identifying symbol, letter or number on the payroll record indicating such employee is a person whose wage is determined in part by gratuities.
- b) The report received from the employee setting forth gratuities received during each workday. Such reports submitted by the employee shall be signed and include his or her Social Security Number.
- c) The amount by which the wage of each such employee has been deemed to be increased by gratuities as determined by the employer (not in excess of 40% of the applicable statutory minimum wage). The amount per hour which the employer takes as a gratuity credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding pay period.
- d) Hours worked each workday in any occupation in which the employee does not receive gratuities and the total daily or weekly straight time payment made by the employer for such hours.
- e) Hours worked each workday in an occupation in which the employee received tips or gratuities, and total daily or weekly straight time earnings for such hours.

Ill. Admin. Code tit. 56, pat 210.720

The courts of this District have found that employers are required to post the posters approved by the IDOL pursuant to 820 ILCS 105/9 in order to take the tip credit and pay employees less than the required Illinois minimum wage. *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 800

(N.D. Ill. 2013)(ruling that the employers are required to post an approved poster to give adequate tip notice under the IMWL); see *Schaefer v. Walker Bros. Enterprises, Inc.*, 2014 U.S. Dist. LEXIS 177157, at *14-15 (N.D. Ill. Dec. 17, 2014). The IDOL-approved IMWL posters include information on tip credit and/or tipped employee's rights. See *Driver, supra*, 917 F. Supp. 2d at 798.

Here, Defendants have no evidence showing that they posted a poster approved by the IDOL and required under the IMWL. The only poster that Defendant produced as evidence during discovery is the IDES poster dated 1986 and 1987 which was left by the previous bar owners. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 32-33, 38. Defendant Polen claims that he showed posters to Plaintiffs when they filled out W-4 forms but those posters were about unemployment and employee's rights about work-related injuries. *Id.*, ¶ 37. Plaintiffs testified that the only poster they saw was the old poster from the IDES that was left by the previous owners of the bar and they never saw any posters regarding wages or their rights issued by the Federal Department of Labor or Illinois Department of Labor. *Id.*, ¶¶ 32-33. Further, Defendants completely failed to keep any of the records that they are required to keep for the tipped employees, such as records tracking any tip amounts received by Plaintiffs and records showing the hours Plaintiff performed tipped duties and non-tipped duties. *Id.*, ¶¶ 14-15, 26-31.

There is no dispute that Defendants failed to provide Plaintiffs the required notice to take the tip credit and thus violated the IMWL when they paid less than the Illinois minimum wages. As such, a motion for summary judgment as to Defendant's liability on Count II should be granted.

### III. Defendant Polen is individually liable.

Under the FLSA and IMWL, an individual with sufficient control over a business and a particular set of the wage violations is personally liable as an employer for those violations." See *Morgan v. Speak Easy, LLC*, 624 F. Supp. 2d 632, 636 (7th Cir. 2007); see also *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001). The statutes define "employer" broadly enough to include an individual with supervisory authority over the plaintiff as a defendant, provided that individual "was responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); see also *Cho v. Maru Rest., Inc.*, 194 F.Supp.3d 700, 704-05 (N.D. Ill. 2016) (confirming that individual corporate officers can be held liable under the IMWL).

To determine whether an individual is an employer under the FLSA and IWML, courts look at the "economic reality" of the parties' relationship. See *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014) (citing cases). Courts employ the same test under both the FLSA and the IMWL to determine a defendant's status as an employer. *Natal v. Medistar, Inc*., 221 F. Supp. 3d 999, 1003 (N.D. Ill. 2016). Under this test, an individual is an employer if she "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id*. (holding that a company's owner and president was an employer because he "managed the day-to-day operations of the business, including hiring, work schedules, discipline, and pay."); see also *Reynoso v. Motel Ltd. liability Co.*, 71 F. Supp. 3d 792, 797 (N.D. Ill. 2014)(the owner of a motel was individually liable because "there was no one with more authority over the terms and conditions of employment").

Defendant Polen has been the owner and operator of Defendant Ardmore Lounge during the entire period while Plaintiffs were employed. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("SOF")**, ¶ 4. He had the power to hire, discipline, and fire the employees. Defendant Polen supervised and controlled Plaintiffs' schedules and pay rates and there was no one with more authority than Defendant Polen over the terms and conditions of Plaintiffs' employment. *Id*., ¶¶ 4, 7-9, 16-18, 22, 29-30, 40-41. Defendant Polen was involved in day-to-day operation of the restaurant. Only Defendant Polen was responsible for overseeing payroll and keeping records on employees' hours and wages (or lack of same). *Id*., ¶¶ 40-41.

Accordingly, there is no material dispute that Defendant Polen was an employer within the meaning of the FLSA and IWML and is individually liable for the violations under the law.

    IV.    **A 3-year statute of limitations applies to this case.**

    1.    **A 3-year statute of limitations always applies to IMWL claims.**

Section 12(a) of the IMWL specifically sets forth a three-year statute of limitations for private actions. 820 ILCS 105/12 (a). Unlike the FLSA (discussed below), this three year statute of limitations is constant and applies to all claims under the IMWL. Plaintiffs' IMWL claims accordingly proceed under this 3-year statute of limitations.

    2.    **The 3-year statute of limitations should apply to the FLSA claims as well.**

With respect to the FLSA claims, if an FLSA violation is determined to be willful, then a three-year rather than a two-year statute of limitations applies, effectively extending the period for which a plaintiff can obtain damages. 29 U.S.C. § 255(a).

There is no dispute that Defendants willfully violated the FLSA triggering the 3-year statute of limitations. There is a willful violation under the FLSA if the employer either knew or acted with

reckless disregard for whether its conduct was prohibited by the Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, (1988). In this case, Defendants knew enough to try to take advantage of the tip credit under the FLSA by paying Plaintiffs less than the required minimum wage because they were getting tips from customers; but at the same time completely ignored the concomitant obligations imposed by the FLSA. Defendants failed to provide a proper tip notice and failed to keep track of the tip amount Plaintiffs received. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 8-7, 16,18-19, 31, 35-39 Defendants also utterly failed to follow the required recordkeeping for tipped employees that is required under 29 C.F.R. § 516.28 (a) as discussed above. *Id.*, ¶¶ 14-15, 26-31.

Defendants' violations and deliberate failure do not stop there. Courts have found willfulness in FLSA cases most often when an employer "deliberately chose to avoid researching the law's terms or affirmatively evaded them." *Hoffman v. Professional Med Team*, 394 F.3d 414, 419-20 (6th Cir. 2005) (citing *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003)). Accordingly, an employer's "failure to keep adequate payroll records," "intentional manipulation of [its] records," and practice of paying employees "off the books" could be "sufficient grounds for concluding that the employer acted willfully. *Marcus v. American Contract Bridge League, Inc.*, Civil Action No. 17-11165-FDS, 2021 U.S. Dist. LEXIS 57205, at *60-62 (D. Mass. Mar. 24, 2021) citing *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir. 2007) (concluding that district court's finding of willfulness was not clearly erroneous when the employer failed to keep adequate payroll records and under-reported its employee's hours ); *Gonpo v. Sonam's Stonewalls & Art LLC*, 2018 U.S. Dist. LEXIS 60333, 2018 WL 1725695, at *9 (D. Mass. Apr. 9, 2018) (finding the evidence sufficient to allow the fact finders to reasonably find willfulness in the cases

where the plaintiffs allege that defendants "failed to keep full and accurate records of hours worked, underreported his hours on pay slips, sometimes paid wages in cash, and consistently failed to pay overtime wages").

Defendants in this case engaged in all of the above. They hired Plaintiffs "off the books" and paid cash, and during that time they never kept any records of Plaintiffs' hours or employment, a practice which Defendants did with at least two other employees as well- Nancy Breen and Wendy Klebs. **Plaintiffs' R.56.1 Statement of Uncontested Material Facts ("PSOF")**, ¶¶ 8-9, 14-15, 25-26. Further, instead of keeping actual hours worked, Defendants just kept records of Plaintiffs' scheduled shifts and engaged in the practice of "assuming" that those were actual hours worked by Plaintiffs, resulting in an underreporting of hours, particularly during special events or when Defenant kept plaintiff's on-call for such events. *Id.,* ¶¶27-30.

The record shows that Defendants have indisputably engaged in the types of employment practices which the Courts have determined show 'willfulness' under the FLSA. As a result, the 3-year statute of limitations applies to Plaintiff's FLSA claims.

## Conclusion

Even viewing all the facts in the light most favorable to Defendants, no reasonable jury could find that Defendants provided a statutorily adequate tip notice under the FLSA and IMWL to the Plaintiffs. Defendants are therefore liable for the full minimum wage to the Plaintiff. Accordingly, Plaintiffs, Kirsten Beausoleil and Daniel Ernst respectfully pray that this honorable Court grant their Summary Judgment on the liability of Defendants for Plaintiffs' claims under FLSA and IMWL.

                                                          Respectfully Submitted,
                                                          Kirsten Beausoleil and Daniel Ernst,
                                                          By: /s/ Heewon O'Connor.
                                                          One of Plaintiffs' Attorneys

Heewon O'Connor (ARDC# 6306663)
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste 212
Elmhurst, IL 60126
Tel. 630-903-6397
Fax. 630-658-0336
heewon@oconnor-oconnor.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, Plaintiffs' Memorandum in Support of Motion for Summary Judgment was served this day on all counsel of record via transmission by electronic mail; all parties to this action being authorized to, and currently utilizing, the CM/ECF system for the Northern District of Illinois.

/s/ Heewon O'Connor.
Heewon O'Connor
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste 212
Elmhurst, IL 60126
Office 630-903-6397
Fax. 630-658-0336

**Service List**

Alycia Alexandra Fitz     alycia@attorneyfitz.com